<pre>
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3   IKAN INTERNATIONAL CORPORATION .  C.A. NO. H-16-936
                                    .  HOUSTON, TEXAS
4   VS.                             .
                                    .
5   PHILIPS LIGHTING NORTH AMERICA .  SEPTEMBER 28, 2016
    CORPORATION, et al              .  2:00 P.M. to 2:26 P.M.
6


7
                     TRANSCRIPT of MOTION HEARING
8            BEFORE THE HONORABLE KEITH P. ELLISON
                     UNITED STATES DISTRICT JUDGE
9


10
    APPEARANCES:
11
    FOR THE PLAINTIFF:              MR. WILLIAM G. SHAW, JR.
12                                  Attorney at Law
                                    1117 Grassmere
13                                  Richardson, Texas  75080

14

15  FOR THE DEFENDANTS:           * MR. JEREMY P. OCZEK
                                    Bond Schoeneck King PLLC
16                                  200 Delaware Ave
                                    Suite 900
17                                  Buffalo, NY  14202

18

19  ALSO PRESENT:                 * MR. JOHN PINT

20

21  OFFICIAL COURT REPORTER:        MS. KATHY L. METZGER
                                    U.S. Courthouse
22                                  515 Rusk
                                    Room 8004
23                                  Houston, Texas  77002
                                    713-250-5208
24  * Appearing by phone

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
</pre>

PROCEEDINGS

*THE COURT:*  Good afternoon and welcome.

*MR. SHAW:*  Good afternoon, Judge.

*MR. OCZEK:*  Good afternoon, Your Honor.

*THE COURT:*  We're on the record now in Ikan versus Philips.  And we'll take appearances of counsel, beginning here in the courtroom.

*MR. SHAW:*  Good afternoon, Judge.  My name is William Shaw, S-h-a-w, on behalf of Ikan.

*THE COURT:*  Thank you.

*MR. OCZEK:*  Good afternoon, Your Honor.  Jeremy Oczek with Bond, Schoeneck and King on the phone, representing defendant Philips Lighting North America Corporation.  And also, Your Honor, as with the initial status conference a couple weeks ago, I have on the line, with your permission, a representative of Philips Lighting, Mr. John Pint.  Mr. Pint is with Philips Lighting Intellectual Property, which is part of Philips Lighting North America Corporation.

*THE COURT:*  Okay.  All of you are welcome and we are glad to have you.

I know something about the history of this case and the fact that it has a companion case in Massachusetts.  It seems to me that it would be good for me to decide the personal jurisdiction question before the Massachusetts -- District of Massachusetts Court gets into the motions pending before it.

1            As I understand it, the assertion of personal

2   jurisdiction over Philips has to do with their licensing -- not

3   "their."  It has to do with its licensing activities directed

4   to residents of the state and further based on assertions of

5   patent infringement directed to residents of the state of

6   Texas.  Is that fair, Mr. Shaw?

7            *MR. SHAW:*  That is fair in part, Your Honor.

8            *THE COURT:*  Okay.

9            *MR. SHAW:*  In addition to that, for specific

10  jurisdiction, the plaintiff has alleged that on March 31st of

11  this year, Philips' general counsel, Mr. Pint, sent an e-mail

12  to me, me on behalf of Ikan, in which he made threats that he

13  was going to contact the administration for a national trade

14  show in Las Vegas, the National Association of Broadcasters,

15  which is a large and substantial trade show.  It's the largest

16  in the country.  And it would have interfered deeply with

17  Ikan's business activities at the trade show.

18           *THE COURT:*  That's the nature of another cease and

19  desist letter, right?  It says, "Stop what you're doing or

20  else"?

21           *MR. SHAW:*  It was a stop what you're doing and sign

22  license agreements or we are going to reserve the right -- they

23  didn't make an overt threat that I'm going to go talk to the

24  NAB administrators, but it was a clearly implied threat, that

25  Philips was going to interfere with Ikan's business at the

1  trade show.

2          *THE COURT:*  Okay.

3          *MR. SHAW:*  So -- if I may finish, Your Honor.

4          *THE COURT:*  Yes, sir.  Yes, sir.

5          *MR. SHAW:*  Those are the facts that support that

6  allegation of personal jurisdiction.

7                  The arguments in the motion to transfer and the

8  motion to dismiss go further than that, because Philips argues

9  that the e-mails and the communications between the two parties

10  constituted nothing more than cease and desist letters, offers

11  of settlement, offers of licensing and hybrids.  The argument

12  of Ikan, as the plaintiff, goes one step further and says,

13  true, all those were elements of the communications between the

14  parties, but Philips went that one step further, making the

15  threat of interfering with business.  They didn't make that

16  as -- that's not an offer of settlement.  That's not an offer

17  of licensing.  That's a threat, that we're going to go that

18  extra step if you don't sign the settlement agreement.

19          *THE COURT:*  Okay.  Are you finished?

20          *MR. SHAW:*  Yes, Your Honor.

21          *THE COURT:*  Okay.  Mr. Oczek.

22          *MR. OCZEK:*  Your Honor, if I may, I think you're

23  exactly right to suggest that the issue of personal

24  jurisdiction is a threshold issue and can be decided and should

25  be decided before we argue next week.  There's an oral argument

1  on the motion to transfer in Boston next week.  And the

2  record's now closed, and the only allegation by Ikan is that

3  there is allegedly specific jurisdiction.  There's no

4  allegation of general jurisdiction, no argument whatsoever

5  about general jurisdiction.  And the only argument is the

6  specific.  And the specific is, is the evidence on the record

7  before this Court consists of both parties conceding there were

8  three years of on-and-off discussions.  In terms of the record,

9  there's only three correspondence from Philips to Ikan.  And

10  this is attached to Ikan's complaint.  They attached a letter

11  from February 20, 2013; an e-mail from March 2013; and then an

12  e-mail from March 31st, 2016, which is the e-mail that Mr. Shaw

13  just referred to.  And that's the only argument -- or only

14  evidence in the record.

15              And, Your Honor, first of all, this is -- the

16  Federal Circuit law applies here for personal jurisdiction,

17  even though personal jurisdiction is in all cases.  Given that

18  there are patent issues at play, the Federal Circuit has said

19  even when it's a declaratory judgment action, that the Federal

20  Circuit law applies.  And what we have, Your Honor, is two

21  seminal cases on this very issue before the Court is, does a

22  cease and desist letter or even threats of infringement rise to

23  the level of specific jurisdiction.  Fifth Circuit --

24        *THE COURT:*  Okay.  You're referring to *Red Wing Shoe*

25  and *Beverly Hills* --

1         *MR. OCZEK:* *Red Wing Shoe*, Your Honor, and the *Avocent*

2 case.

3         *THE COURT:* Okay.

4         *MR. OCZEK:* Those two, I think, clearly say that cease

5 and desist letters, license negotiations, threats of -- or

6 accusations of infringement clearly don't confer personal

7 jurisdiction. And Ikan, by the way, doesn't come forward with

8 any other case otherwise. It only cites to *Red Wing* in its

9 argument.

10         And the other thing that's important here, Your

11 Honor -- and *Avocent* talks about this pretty nicely. It talks

12 about the different -- the distinction and the personal

13 jurisdiction of analysis between what I'll call a garden

14 variety patent infringement suit, which is a typical suit --

15         *THE COURT:* I've got to slow you down a little bit,

16 Mr. Oczek. You're going too fast for me and for the court

17 reporter.

18         *MR. OCZEK:* Sure. I apologize, Your Honor. Thank

19 you.

20         So, with respect to *Avocent* -- that's a Federal

21 Circuit case, which is set in our brief. It's 552 F.3d 1324.

22 But *Avocent* has a nice discussion on the distinction and the

23 personal jurisdiction analysis between what I'll call a garden

24 variety patent case, which is where the patentee is asserting

25 infringement, and on the other hand, which is what we have

here, a declaratory judgment action involving allegations of
noninfringement and invalidity.  And to that end, *Avocent*
says -- and this is on 1486 of *Avocent* -- "But in the context
of an action for declaratory judgment of noninfringement,
invalidity and/or unenforceability, the patentee is the
defendant, and the claim asserted by the plaintiff relates to
the, quote, 'wrongful restraint by the patentee on the free
exploitation of noninfringing goods, such as the threat of an
infringement suit.'  Thus, the nature of the claim" --

        *THE COURT:*  Okay.  Take a breath.  Take a breath.
Slow.

        *MR. OCZEK:*  Sure.  "Thus the nature of the claim in a
declaratory judgment action is, quote, 'to clear the air of
infringement charges,' end quote.  Such a claim neither
directly arises out of nor relates to the making, using,
offering to sell, selling or importing of arguably infringing
products in the forum, but instead arises out of or relates to
the activity of the defendant patentee in enforcing the patent
or patents-in-suit.  The relevant inquiry for specific personal
jurisdiction purposes then becomes to what extent has the
defendant patentee, quote, 'purposefully directed such
enforcement activities at residents of the forum,' end quote,
and the extent to which the declaratory judgment claim, end
quote -- or, quote, 'arises out of or relates to those
activities,'" end quote.

1            But I think that's important to state, Your

2    Honor.  Because, again, all we have here is the allegations of

3    infringement that are the basis of specific jurisdiction.  The

4    Federal Circuit cases that we cited are clear, that even on the

5    facts that Mr. Shaw cites, even assuming those facts are true,

6    that doesn't rise, that doesn't confer specific jurisdiction.

7    And as a matter of law, this case must be dismissed as to

8    Philips Lighting.

9            And there's also an instructive recent case from

10   a sister court in the Western District of Texas, decided in

11   March 2016 of this year, and that's the *Broadway Bank* case,

12   which pursuant to Your Honor's procedures for citing

13   unpublished decisions, that's attached as Docket 17-5 to our

14   reply.  But just like here, there were allegations of patent

15   infringement.  On the basis of those allegations, the

16   declaratory judgment, plaintiff filed an action, and on very

17   similar facts to what we have here, the Western District

18   dismissed the case for lack of personal jurisdiction.

19        *THE COURT:*  Okay.  Thank you.

20        *MR. OCZEK:*  So, Your Honor, we submit on the record

21   before this Court and as a matter of the clear Federal Circuit

22   law on this very issue, as a threshold issue, personal

23   jurisdiction -- there's no personal jurisdiction over Philips

24   Lighting, and the Court can decide this whole motion on this

25   issue.

1    *THE COURT:*  Okay.  Thank you very much.

2            Okay.  Mr. Shaw.

3        *MR. SHAW:*  Your Honor, the various cases that Philips

4   cites all have a limited set of circumstances and the limited

5   circumstances are that the communications between the parties

6   constituted mere cease and desist letters, mere demands for

7   licensing agreements.  It doesn't go that next step, which

8   Philips went in this case, of adding in threats of interfering

9   with the business activities of the alleged infringing party.

10  The extra step that Philips went in sending the e-mail of

11  March 31st of this year takes this case beyond the realm of

12  cases like *Red Wing* and the *Avocent* case and the various other

13  cases cited, such as *Companion* and the *National Bank versus*

14  *Plano* case.

15          I would like to recite briefly from *Red Wing*,

16  since Your Honor pointed to that and Mr. Oczek did as well.

17          *THE COURT:*  Okay.

18        *MR. SHAW:*  This is *Red Wing Shoe Company versus*

19  *Hockerson-Halberstadt, Inc*.  And it is 148 F.3d, 1355.  And I'm

20  reciting from pages 1360, 1361.

21          "Even though cease and desist letters alone are

22  often substantially related to the cause of action, thus

23  providing minimum contacts, the minimum requirements inherent

24  in the concept of fair play and substantial justice defeat the

25  reasonableness of jurisdiction.  Principles of fair play and

1  substantial justice afford a patentee sufficient latitude to

2  inform others of its patent rights without subjecting it to

3  jurisdiction in a foreign forum.  A patentee should not subject

4  its -- excuse me.  A patentee should not subject itself to

5  personal jurisdiction in a forum solely by informing a party

6  who happens to be located there of suspected infringement.

7  Grounding personal jurisdiction on such contacts alone would

8  not comport with the principles of fairness."

9      That's what the *Red Wing* court says.  The facts

10 in this case go beyond that.

11   *THE COURT:*  What's your best authority for the

12 proposition that that next step makes Philips subject to

13 jurisdiction?

14   *MR. SHAW:*  I don't have a specific case to recite to

15 you at this moment.  It's the concept that Philips directed its

16 actions from its office in Boston, Massachusetts, to the office

17 of Ikan in Houston, Texas, sending a threat, that it was going

18 to interfere with its business relationships.  The cases that

19 are cited by defendant, Philips, do not --

20   *THE COURT:*  They don't cover that fact?

21   *MR. SHAW:*  They do not rise to that.  Therefore, I

22 step back to the general concept of first to file -- I'm sorry.

23 You're asking about jurisdiction.

24   *THE COURT:*  Yes.

25   *MR. SHAW:*  Personal jurisdiction is established by the

1  actions that Philips directed at Ikan -- excuse me -- in

2  Houston.

3       THE COURT:  Okay.  Mr. Oczek.

4       MR. OCZEK:  Your Honor, I think that this is a novel

5  and new argument by Mr. Shaw, which is certainly not set forth

6  in his opposition, and as he concedes, he has no support for

7  it.  That being said, I think if you read -- I think the -- I

8  think the *Red Wing* case, the *Avocent* case, and the cases we

9  cited from the sister Texas courts on this very issue

10  completely support our position.

11            And I should also add, there are no allegations

12  of any sort of interference with business contacts in this

13  case.  There's no claim.  The only claims in the original

14  declaratory judgment complaint filed in April and in the claims

15  in the amended complaint in August are simply to alleged

16  noninfringement and alleged invalidity.  That's it, nothing

17  else.  So, to the extent Mr. Shaw argues otherwise, that's

18  certainly not in the case.

19       THE COURT:  So, you're saying that the threats of

20  disrupting the Las Vegas show were not part of the complaint?

21       MR. OCZEK:  Well, first of all, I wouldn't say they

22  were threats to disrupt the Las Vegas show.  That's certainly

23  Mr. Shaw's spin.  I think an objective read of that e-mail in

24  context --

25       THE COURT:  Well, I mean, but for now, the

1  nonmovant's --

2        *MR. OCZEK:*  Yes.

3        *THE COURT:*  -- the nonmovant's allegations have to be

4  accepted.  But you're saying that allegation doesn't appear in

5  the complaint; is that correct?

6        *MR. OCZEK:*  That's correct, Your Honor.

7        *THE COURT:*  All right.  I want to consult with my

8  colleagues just a moment.  Please don't go away.

9        *MR. OCZEK:*  Okay.

10    *(Brief break.)*

11        *THE COURT:*  Okay.  I'm back.  Anything more from

12  anyone?

13        *MR. SHAW:*  Yes, Your Honor, if I may.

14        *THE COURT:*  Yes, sir.

15        *MR. SHAW:*  Your Honor asked me what was my authority

16  for specific jurisdiction.

17        *THE COURT:*  Yes, sir.

18        *MR. SHAW:*  And let me say it this way:  The authority

19  for specific jurisdiction arises from the declaratory judgment

20  statute itself.  The question is whether this became a

21  justiciable controversy at the time that the March 31st e-mail

22  was sent to Ikan.  Did that create a justiciable controversy

23  between the parties that was more than just -- that arose from

24  more than just letters of cease and desist and letters of

25  offer.  By sending that e-mail that constituted a threat to

interfere with business relations at the trade show, Philips created a justiciable controversy that was then ripe to be brought to the Court.

THE COURT: Well, don't cease and desist letters by their nature carry with it -- carry with them some threat of action? I mean, that's built into a cease and desist letter, isn't it?

MR. SHAW: I accept that premise. Yes, it does. That's the whole purpose of a cease and desist letter, either quit or something bad is going to happen, such as we're going to file suit, but not something bad will happen such as we're going to go to the National Association of Broadcasters and tell them that you are infringing and thereby get you kicked out of the trade show or otherwise interfere with your business at the trade show. That was the step -- that was the one step further than just bringing an action in court.

THE COURT: Well, this is catching me totally unaware. I wasn't -- I saw the reference to the threats and that was invoked to explain why Ikan had to file a lawsuit here. And --

MR. OCZEK: Your Honor, if I may.

THE COURT: -- I didn't know that it was going to be used as a basis for personal jurisdiction.

Yes, Mr. Oczek.

MR. OCZEK: Your Honor, Mr. Shaw, with all due respect, is confusing the issues between Article III

jurisdiction and personal jurisdiction, which are distinct
issues.  Personal jurisdiction obviously is whether there's
specific or general jurisdiction over the defendant.  What he
seems to be arguing by the cease and desist letter, is that
there was -- that it demonstrated that there was a case or
controversy between the parties such as to confer Article III
jurisdiction.  We don't contest that there's Article III --
that there's a case in controversy, an Article III
jurisdiction, but that's completely separate and a distinct
issue from personal jurisdiction.

       *THE COURT:*  No, I think I understand the distinction.

       *MR. OCZEK:*  Yes.

       *THE COURT:*  But --

       *MR. OCZEK:*  That's the issue we raised under 12(b)(2).

       *THE COURT:*  -- I'm just caught unaware on this,
because I didn't think of this as a basis on which to rest
personal jurisdiction.  And I haven't even looked at the letter
or whatever.  Is it in the form of an e-mail or telephone
conversation or what?

       *MR. SHAW:*  This was in the form of an e-mail on
March 31st from Mr. Pint to me.  If the Court would like, I
have a copy of --

       *THE COURT:*  Hand it to Mr. Rivera, if you would.

       *MR. SHAW:*  Mr. Oczek, what I've handed to the clerk is
an unmarked copy of the e-mail that John Pint sent me on

1  March 31st of 2016.

2        *MR. OCZEK:*  Is this a docket copy?

3        *MR. SHAW:*  No, this does not happen to be a docket

4  copy.  It's a complete copy from my e-mail system.

5        *THE COURT:*  It says it's from John Pint, P-i-n-t.

6  It's to William Shaw.  It begins, "Hi, Bill."  Are you familiar

7  with that Mr. Oczek?

8        *MR. SHAW:*  If I may, Your Honor.  The paper that I

9  handed you, the first page of the paper I handed you is

10 identical to what is attached to both the amended complaint and

11 the complaint.  The following pages are not part of the

12 complaint.

13       *MR. OCZEK:*  Your Honor, what I have in front of me is

14 Docket 11-9, which is one of the exhibits to the amended

15 complaint, and that is the March 31st e-mail.

16       *THE COURT:*  Okay.  The second paragraph is, "I see

17 that Ikan will be attending the NAB show in a few weeks."  Do

18 you see that?

19       *MR. SHAW:*  That is part of the exhibit that Mr. Oczek

20 just cited to you, Judge.

21       *THE COURT:*  I just want to make sure Mr. Oczek is

22 where I am.

23       *MR. OCZEK:*  Yes, Your Honor.

24       *THE COURT:*  You have the letter in front of you,

25 right?

1          *MR. OCZEK:*  I do.

2          *THE COURT:*  Well, I don't know that this is much

3   beyond a cease and desist letter, just Philips reserves all

4   rights, including its right to bring the issue to NAB's

5   attention.  I'm not sure that's much of a threat, any different

6   from cease and desist.

7          The last sentence of that paragraph is, "I'm

8   sorry that it has come to this, but Ikan cannot simply continue

9   to infringe while other companies, including several that will

10  be at the show" -- omission -- "are respecting Philips'

11  rights."

12          I'm afraid this is not a separate and independent

13  basis for personal jurisdiction.  I can see why it was a matter

14  of some concern to Ikan, but I'm afraid I'm going to have to

15  grant the motion to dismiss on personal jurisdiction grounds.

16  I'm very sorry.  These are always hard cases.  Thank you very

17  much.

18          *MR. SHAW:*  Thank you, Judge.

19          *MR. OCZEK:*  Thank you, Your Honor.

20          *THE COURT:*  Thank you.

21          *MR. SHAW:*  Thank you, Judge.  Appreciate your time.

22      *(Concluded at 2:26 p.m.)*

23                          * * *

24  I certify that the foregoing is a correct transcript from the

25  record of proceedings in the above-entitled cause, to the best

of my ability.


/s/ _Kathy L. Metzger_____                     ___12-16-2016___
Kathy L. Metzger                                   Date
Official Court Reporter